1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JUDITH A. RODERICK,** | **1:11-cv-02093 LJO DLB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS WEISSMAN; COMDEN; WASSERMAN, COMDEN, CASSELMAN & ESENSTEN; AND WASSERMAN, COMDEN & CASSELMAN'S MOTION TO STRIKE COMPLAINT AS "SLAPP" SUIT (DOC. 22)** |
| **v.** | |
| **IRVIN DONALD WEISSMAN, an individual, aka I. DONALD WEISSMAN; LEONARD J. COMDEN, an individual; KARIN R. LEAVITT, an individual; WASSERMAN, COMDEN & CASSELMAN, L.L.P., a law firm and partnership; WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P., a law firm and partnership; MICHAEL TAVAREZ, an individual; SHAWN TAVAREZ, an individual; and PETER CHIS, an individual,** | |
| **Defendants.** | |

## I. INTRODUCTION

This lawsuit arises out of the filing of two underlying cases:  (1) *Destfino, et al. v. Kennedy, et al.*, filed in Stanislaus County Superior Court, then removed on August 26, 2008 to this Court as Case No. 1:08-cv-01269 LJO DLB; and (2) *Mansu, et al. v. Kennedy, et al.*, filed in San Joaquin County Superior Court, Case. No. 39-2008-00183590-CU-FR-ST (collectively, "Underlying Actions"). *Destfino* and *Mansu*, as well as a third action, *Whaley et al. v. Kennedy, et al.*, San Bernardino County

1

Superior Court Case No. CIVVS-802478, were filed by the law firm of Wasserman, Comden &

Casselman, L.L.P ("WCC"), now known as Wasserman, Comden, Casselman & Esensten, L.L.P.

("WCCE"), on behalf of plaintiffs who alleged they were victimized by a fraudulent "Corporation Sole"

debt and tax elimination scheme allegedly marketed by individuals named as defendants in the

Underlying Actions.  As alleged in the Underlying Actions, the scheme was marketed as a full service

program and involved the referral of individuals to various professionals who could help them establish

a "Corporation Sole" in the State of Washington, which they could use to, among other things, avoid

paying taxes.  *See generally* Complaints in Underlying Actions, Attached to Defendants' Request for

Judicial Notice ("DRJN"), Doc. 27, Exhs. B & C.  One of these professionals was Judith A. Roderick,

who was alleged to have provided tax expertise to some of the plaintiffs in the Underlying Actions.  *Id.*

at ¶ 14.  All claims brought against Roderick in *Destfino* or *Mansu* were eventually dismissed on noticed

motions.  *See Destfino*, 1:08-cv-01269, Doc. 141; *Mansu*, Case No. 39-2008-00183590, Doc. 492.

Roderick now brings the instant lawsuit against WCC, WCCE, and individual lawyers Irvin

Donald Weissman, aka I. Donald Weissman ("Weissman"), and Leonard J. Comden ("Comden").

Roderick alleges that the filing and prosecution of the *Destfino* and *Mansu* actions constituted malicious

prosecution.[1]  The Complaint contains no allegations concerning the *Whaley* case.

Before the court for decision is WCC, WCCE, Weissman, and Comden's motion to strike,

brought pursuant to California Code of Civil Procedure, section 425.16, which permits a special motion

to strike any "Strategic Lawsuit Against Public Participation" ("SLAPP").  Doc. 22.  Plaintiff timely

opposed the motion and later filed a supplemental case citation.  Docs. 31 & 35.  Defendant Replied.

Doc. 32.  The motion was originally set for hearing on February 16, 2012, but the hearing was vacated

and the matter submitted for decision on the papers.  *See* Doc. 36.

---

[1] The Complaint originally named a third lawyer, Karin R. Leavitt, as well as individual plaintiffs from the underlying *Destfino* and *Mansu* actions, Michael Tavarez, Shawn Tavarez, and Peter Chis.  These four individuals were voluntarily dismissed from this malicious prosecution case in early January 2012.  *See* Docs. 19 & 21.

1

## II. STANDARD OF DECISION

2    California's "Anti-SLAPP" statute provides in relevant part:

3
4
5

> A cause of action against a person arising from any act of that person in furtherance of
> the person's right of petition or free speech under the United States or California
> Constitution in connection with a public issue shall be subject to a special motion to
> strike, unless the court determines that the plaintiff has established that there is a
> probability that the plaintiff will prevail on the claim.

6    Cal. Code Civ. Pro. § 425.16(b)(1).

7    A court considering a motion to strike under the Anti-SLAPP statute must engage in a two-part

8    inquiry.  First, a defendant must make an initial prima facie showing that the plaintiff's suit "aris[es]

9
10   from" activity protected by the Anti-SLAPP statute.  *Brill Media Co. v. TCW Group, Inc.*, 132 Cal. App.

11   4th 324, 329 (2005); Cal. Code Civ. Pro. § 425.16(b)(1).  In performing this analysis, the California

12   Supreme Court has stressed, "the critical point is whether the plaintiff's cause of action itself was based

13   on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*,

14   29 Cal. 4th 69, 78 (2002).  If the defendant is able to make this threshold showing, the burden shifts to

15   the plaintiff to demonstrate a probability of prevailing on the challenged claims.  In practice, a plaintiff

16   must show that the claim is "both legally sufficient and supported by a sufficient prima facie showing of

17   facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow*

18
19   *Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 744 (2003).  Claims for which Plaintiff is able to satisfy

20   this burden are "not subject to being stricken as a SLAPP." *Id.*

21   The Ninth Circuit has clearly articulated the evidentiary burden applicable to Anti-SLAPP

22   motions heard in federal district court:

23
24

> In the anti-SLAPP context, "probability" is a low bar. To withstand an anti-SLAPP
> motion to strike in California,

25
26
27
28

> the plaintiff must demonstrate that the complaint is both legally sufficient and
> supported by a sufficient prima facie showing of facts to sustain a favorable
> judgment if the evidence submitted by the plaintiff is credited. In deciding the
> question of potential merit, the trial court considers the pleadings and evidentiary
> submissions of both the plaintiff and the defendant; though the court does not
> weigh the credibility or comparative probative strength of competing evidence, it
> should grant the motion if, as a matter of law, the defendant's evidence supporting

3

the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.

*Manufactured Home Communities, Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1176–77 (9th Cir. 2011) (internal alterations and quotation marks omitted). <u>The plaintiff's burden resembles the burden he would have in fending off a motion for summary judgment or directed verdict</u>. *Gilbert v. Sykes*, 147 Cal. App. 4th 13 (2007) [additional citation].

*Roberts v. McAfee Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) (emphasis added).

## III. <u>DISCUSSION</u>

**A.      <u>Does the Plaintiff's Suit "Arise From" Activity Protected by the Anti-SLAPP Statute?</u>**

Defendants bear the burden of making a prima facie showing that the plaintiff's suit "aris[es] from" activity protected by the Anti-SLAPP statute. *Brill Media*, 132 Cal. App. 4th at 329; Cal. Code Civ. Pro. § 425.16(b)(1). "[T]he critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). "[A] defendant that satisfies its initial burden of demonstrating the targeted action is one arising from protected activity faces no additional requirement of proving the plaintiff's subjective intent ... Nor need a moving defendant demonstrate that the action actually has had a chilling effect on the exercise of such rights." *Id.* at 88 (citation omitted). "A defendant meets this [protected activity] burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036, 1043 (1997).

Subdivision (e) provides:

As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

(1) <u>any written or oral statement or writing made before a legislative, executive, or judicial proceeding,</u> or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

1

2

    (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

3 (Emphasis added.)  "The constitutional right to petition ... includes the basic act of filing litigation or

4 otherwise seeking administrative action." *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 19 (1995).  "It

5 is well established that filing a lawsuit is an exercise of a party's constitutional right of petition."

6 *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001).  The "filing of a judicial complaint satisfies the

7 'in connection with a public issue' component of section 425.16, subdivision (b)(1) because it pertains

8 to an official proceeding."  *Id.* at 1087.

9

10

11

    [B]y its terms, section 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch. By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit.

12 *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 734-35 (2003).

13     Plaintiff concedes that *Jarrow* establishes that a malicious prosecution action is subject to an

14 Anti-SLAPP motion, but nonetheless insists that the remaining Defendants, law firms and lawyers, do

15 not have "standing" to assert such a motion in this case, because the plaintiffs in the underlying case

16 hold the exclusive rights to petition the court.  Plaintiff cites *Moore v. Shaw*, 116 Cal. App. 4th 182

17 (2004), in which a trusts and estates attorney drafted an agreement to terminate a trust prematurely.  *Id.*

18 at 188.  Former beneficiaries of the terminated trust sued the attorney for intentional and negligent

19 participation in a breach of trust.  *Id.* at 190.  The court found that the Anti-SLAPP statute did not apply

20 because the attorney's conduct was "part of a private transaction" not a "written or oral statement or

21 writing made in connection with an issue under consideration or review by a *judicial body*...."  *Id.* at

22 199-200 (emphasis in original).  *Moore* is inapposite here, where the law firm and attorney Defendants

23

24 are being sued for filing and pursuing claims before a judicial body.

25

26     Plaintiff next cites *Visher v. City of Malibu*, 126 Cal. App. 4th 364 (2005)[2], in which property

27

28 ―――――――――――
[2] The citation provided by Plaintiff was actually to "*Visher v. City of Malibu*, 126 C.A. 364," which presumably was meant to
5

owners, the Vishers, petitioned for a writ of mandate to force the City of Malibu to process their coastal

development permit.  The City refused to process the permit, preferring instead to wait for resolution of

its appeal from separate litigation between the City and the California Coastal Commission over

Malibu's local coastal plan.  126 Cal. App. 4th at 366-67.  The City filed an Anti-SLAPP motion,

arguing that the Vishers' claim arose out of Malibu's appeal in the Coastal Commission litigation.  *Id*. at

367-68.  The court disagreed, concluding instead that the Vishers' petition arose from Malibu's decision

to refuse to process their permit application, not from Malibu's appeal.  *Id*. at 370.  In addition, the court

noted that Malibu's refusal to process the application predated its lawsuit against the Coastal

Commission.  *Id*.  Accordingly, the Anti-SLAPP motion was deemed "frivolous," triggering application

of the Anti-SLAPP statute's attorney's fee shifting provision.  *Id*. at 371; *see also* Cal. Code Civ. Pro. §

426.16(c).  Plaintiff fails to explain how this case controls here, where the lawsuit arises directly from

Defendants' filing and pursuing claims in this and other courts of law.

Finally, Plaintiff filed a supplemental statement quoting the following passage from *Shekhter v.*

*Financial Indemndity Co.*, 89 Cal. App. 4th 141, 152 (2001):

> We recognize that in some cases a lawyer may not be "that person" within the meaning of
> section 425.16, subdivision (b)(1) exercising free expression or petition rights. Under
> some circumstances, "that person" will merely be the client but not the attorney. [3]

The *Shekhter* court examined the legislative history of the Anti-SLAPP statute and generally concluded

that "[n]o legislative history documents indicate such a person's lawyer may bring a special motion to

strike unless the attorney exercised free exercise or petition rights and such led to the retaliatory

litigation." *Id*. at 153.  Specifically, *Shekhter* concluded that an attorney and a law firm could bring an

---

reference to 126 Cal. App. 364.  No such case exists.  The actual citation is *Visher v. City of Malibu*, 126 Cal. App. 4th 364
(2005), which the Court had to look up using a name search.

[3] The "that person" language referenced in *Shekhter* is found in Cal. Code Civ. Pro. § 425.16(b)(1):

> A cause of action against a person arising from any act of <u>that person</u> in furtherance of the person's right of petition
> or free speech under the United States Constitution or the California Constitution in connection with a public issue
> shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is
> a probability that the plaintiff will prevail on the claim.

(Emphasis added.)

1   Anti-SLAPP motion for disseminating confidential information to publishers and broadcasters, because

2   this conduct constituted the exercise of free expression rights. *Id*. The *Shekhter* court specifically

3   refused to address whether an Anti-SLAPP "motion to strike could have been brought by [the attorney]

4

5   and the [] law firm based on the exercise of the right to petition since they were acting as counsel" in

6   that regard. *Id*. at 154. Therefore, *Shekhter* has no application here.

7          It is oxymoronic to assert that an individual or entity can be sued for malicious prosecution but

8   that same individual or entity cannot be protected by section 425.16 for the conduct that forms the basis

9   of the malicious prosecution action. Defendants have satisfied their prima facie burden to establish that

10  Plaintiff's suit arises from activity protected by the Anti-SLAPP statute.

11

12  **B.        Can Plaintiff Demonstrate a Probability of Prevailing on the Challenged Claims?**

13         Given that Defendants have satisfied their initial burden, the burden shifts to Plaintiff to

14  demonstrate a probability of prevailing on the challenged claims. Plaintiff's only causes of action are

15  for malicious prosecution. "To establish a cause of action for the malicious prosecution of a civil

16  proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the

17  direction of the defendant and was pursued to a legal termination in [plaintiff's] favor; (2) was brought

18  without probable cause; and (3) was initiated with malice." *Citi-Wide Preferred Couriers, Inc. v.*

19  *Golden Eagle Ins. Corp.*, 114 Cal. App. 4th 906, 911 (2003). These elements "have historically been

20  carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing

21  their claims to court by the prospect of a subsequent malicious prosecution claim." *Sheldon Appel Co. v.*

22  *Albert & Olliker*, 47 Cal. 3d 863, 872 (1989).

23         Defendants do not dispute that both the *Destfino* and *Mansu* matters were commenced by or at

24  the direction of the Defendants and were pursued to a legal termination in Plaintiff's favor. Defendants

25  do insist that both actions were supported by probable cause and were not initiated or prosecuted with

26

27  malice. To survive this motion, Plaintiff must show that the complaint is "supported by a sufficient

28

7

prima facie showing of facts to sustain a favorable judgment" on the issues of probable cause and malice. *See Roberts,* 660 F.3d at 1163 (internal citations and quotations omitted). The Court "considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence." *Id*. The motion should be granted if "as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Id.* "The plaintiff's burden resembles the burden he would have in fending off a motion for summary judgment or directed verdict." *Id.*

### 1.    **Probable Cause.**

In the original *Destfino* complaint, Roderick was alleged to have participated in a wide-ranging conspiracy and was named as a defendant in causes of action for: fraud; unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200 et seq.; fraud in the inducement; racketeering; unjust enrichment; conversion; conspiracy to commit a fraudulent transfer; intentional misrepresentation; negligent misrepresentation; breach of the implied covenant of good faith and fair dealing; intentional infliction of emotional distress; negligence; harassment; and stalking. *See Destfino*, 1:08-cv-01269, Doc. 1. The original *Mansu* complaint contained similar allegations against Roderick, without the harassment and stalking claims. DRJN, Doc. 27, Ex. C. Notably absent from either complaint was any specific factual allegation connecting Roderick to the conspiracy. The original complaints simply alleged that Roderick "is and was at all times relevant hereto an individual living in the state of Washington.... Roderick puts herself forward as a Corporation Sole tax expert." *Destfino*, 1:08-cv-01269, Doc. 1. at ¶ 14; DRJN, Doc. 27, Ex. C ¶ 14. This was the only substantive mention of Roderick in the original complaints. The *Destfino* complaint was amended several times. In the first amended complaint, the allegations against Roderick did not get any more specific. *See* 1:08-cv-01269, Doc. 83, at ¶ 14. In the second amended complaint, the one paragraph containing any specific substantive information about Roderick was expanded slightly:

1
2
3
4
5
6

14.    Defendant JUDITH RODERICK, is and was at all times relevant hereto an individual living in the State of Washington, doing business in this judicial district under the laws of the State of California. (Hereinafter, "RODERICK".) RODERICK was employed by KENNEDY as the "Corporation Sole tax expert." RODERICK was responsible for the preparation of all marketing materials describing the tax benefits of the corporations sole, the preparation of all required government tax documents required for the corporations sole sold to individuals, and participated in ongoing tax advice to the purchasers of the corporations sole. RODERICK personally received a percentage of the fees charged to new buyers of the corporations sole.

7

1:08-cv-01269, Doc. 112.  This version of the complaint was dismissed without leave to amend as to

8

Roderick and numerous other defendants.  *See* 1:08-cv-01269, Doc. 141.

9

The critical question here is whether Defendants possessed probable cause to file and prosecute

10

these claims against Roderick.  Probable cause is defined as "a suspicion founded upon circumstances

11

sufficiently strong to warrant a reasonable person in the belief that the charge is true." *Nicholson v.*

12
13

*Lucas*, 21 Cal. App. 4th 1657, 1665 (1994) (internal citations and quotations omitted).  "The probable

cause element calls on the trial court to make an objective determination of the 'reasonableness' of the

14

defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the

15

16

institution of the prior action was legally tenable.  The resolution of that question of law calls for the

17

application of an objective standard to the facts on which the defendant acted." *Sheldon Appel*, 47 Cal.

18

3d at 878.  "Probable cause does not depend on the actual state of the case, but rather on whether the one

19
20

instigating the proceeding is possessed of knowledge, information, or facts sufficient to cause a

reasonable, or a reasonably prudent, person to believe honestly that the charge is true." *Nicholson*, 21

21

22

Cal. App. 4th at 1665.  Probable cause is satisfied if "any reasonable attorney would have thought the

claim tenable" when brought.  *Sheldon Appel*, 47 Cal. 3d at 886.  *Roberts v. Sentry Life Insurance*, 76

23

24

Cal. App. 4th 375, 382 (1999), explains:

25

26

27

28

A plaintiff has probable cause to bring a civil suit if his claim is legally tenable. This question is addressed objectively, without regard to the mental state of plaintiff or his attorney. [*Sheldon Appel*, 47 Cal. 3d at 881.] The court determines as a question of law whether there was probable cause to bring the maliciously prosecuted suit. [*Id*. at 874.] Probable cause is present unless any reasonable attorney would agree that the action is totally and completely without merit. [*Id*. at 885.] This permissive standard for bringing

1

2

suits, and corresponding high threshold for malicious prosecution claims, assures that litigants with potentially valid claims won't be deterred by threat of liability for malicious prosecution. [*Id*. at 872.]

3

4

5

6

7

 Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must separately show lack of probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which all reasonable lawyers agree totally lack merit—that is, those which lack probable cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present no probable cause. (*See In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [an appeal that is simply without merit is not by definition frivolous and should not incur sanctions].)

8

9

(Emphasis added)(parallel citations omitted).  A lawyer is entitled to rely on information provided by the

10

client, unless the lawyer discovers that information to be false.  *Daniels v. Robbins*, 182 Cal. App. 4th

11

204, 223 (2010).

12

13

### a.     Defendants' Opening Evidence.

14

Here, although it is Plaintiff's burden to demonstrate the absence of probable cause, Defendants

15

submitted three declarations along with their Anti-SLAPP motion.  The Declaration of I. Donald

16

Weissman explains that Weissman became an associate at WCC in August 2002, and was promoted to

17

partner in April 2007.  Doc. 24 at ¶ 4.  In January 2007,Weissman was contacted by several individuals

18

regarding a tax elimination scheme.  *Id*. at ¶ 5.  These individuals described involvement with a

19

"Corporate Sole" or "Corporation Sole" program, followed by various problems with foreclosures, loss

20

of cars, bad credit, and other issues.  *Id*.  After further inquiry, Weissman learned the names of the

21

primary salespeople of the Corporation Sole scheme and of a Department of Justice investigation against

22

William Kennedy in connection with the scheme.  *Id*. at ¶ 7.  Weissman's investigation also uncovered a

23

lawsuit against Rita Johnson, to whom Kennedy directed clients.  *Id*.  Weissman had "many, many

24

conversations" with prospective clients and spoke with several FBI agents and police investigators about

25

26

the alleged scheme.  *Id*.  Weissman also "directed certain paralegals to talk to the potential clients and

27

research the merits of the claims...."  *Id*. at ¶ 8.

28

Based on his conversations and discussions with paralegals assisting him, as well as his "review of various documents, emails, memorandum and other related documents and correspondence, [Weissman] decided there was probable cause to file [claims] against Judith A. Roderick for her involvement in the Corporate Sole scam." *Id*. at ¶ 9.  Weissman's declaration is, however, devoid of any factual details supporting this assertion.  He asserts "[s]he was a part of the Kennedy group of individuals dealing with the formation of the Corporate Sole entities." *Id*.  He also declares that Roderick, along with Rita Johnson "were in the State of Washington." *Id*. at ¶ 7.  Weissman also attaches two invoices for tax services issued by Roderick to a Mitchell Whaley, the lead plaintiff in the *Whaley* action.  None of this establishes any more than that Roderick may have been associated with Kennedy, she conducts business in the same state as Johnson, and provided some kind of tax service to Whaley, who is not a plaintiff in either the *Destfino* or *Mansu* cases, the only cases that are mentioned in the instant malicious prosecution action.[4]

Defendants also submitted the Declaration of Sheryl J. Greene, a paralegal at WCC and WCCE who assisted Weissman in connection with the Corporation Sole lawsuits.  Doc. 25 at ¶¶ 2-4.  She declares that "[p]rior to adding any causes of action and/or defendants, [she] did extensive research to determine which causes of action, facts and defendants should be included in the complaints.  This included reviewing documents, discussions with individual clients and legal research." *Id*. at ¶ 4.  However, although she states that she "specifically reviewed certain documents that established [Roderick's] association with the other defendants in the fraudulent scheme and supported the claims against [Roderick]," *id*. at ¶ 6., her declaration is entirely devoid of any specific information about these documents and what they established related to Roderick's allegedly unlawful conduct.

Finally, Defendants submitted the Declaration of Leonard J. Comden, a founding partner of both

---

[4] As a result, even if, *arguendo*, these receipts evidence that Roderick participated in a fraud that victimized Whaley, these documents do not establish that Defendants had probable cause to bring claims against Roderick on behalf of any other individual, let alone any of the plaintiffs in the *Destfino* or *Mansu* cases.

1  WCC and WCCE.  Doc. 26 at ¶ 3.  He admits to only being "vaguely familiar with the fact that Mr.

2  Weissman was working on cases involving individuals scammed out of money through a fraudulent

3  scheme."  *Id*. at ¶ 7.  He "was never aware of any of the factual details relating to the underlying actions,

4  and [] did not directly authorize Mr. Weissman to sue any particular defendant in the underlying

5  actions...."  *Id*.  He did not work on any of the underlying actions while Weissman was at the firm, but

6  took over the cases when Weissman left the firm.  *Id*. at ¶¶ 9-10.  As a result, although substitutions of

7  attorney were obtained from several plaintiffs, Comden argued the *Destfino* matter on appeal.  *Id*. at ¶¶

8  11-12.

9

10        Collectively, none of these declarations even comes close to establishing that Defendants

11  possessed probable cause to bring any claims against Roderick, let alone the litany of claims contained

12  in the *Desfino* and *Mansu* actions.  However, because Defendants do not bear the initial burden of proof

13  in this instance, the Court turns to Plaintiff's submissions.

14

15                **b.      Plaintiff's Evidence of Lack of Probable Cause**

16        Plaintiff first presents the Declaration of Plaintiff's counsel, Monte Day, Doc. 31-2, a rambling

17  exposition that largely contains redundant argument, rather than any factual material relevant to the key

18  inquiry: whether Defendants possessed probable cause to file and pursue claims against Plaintiff.

19  Among other things, attached to Day's Declaration is a photograph of Peter Kim, another alleged

20  perpetrator of the Corporation Sole scheme, standing alongside former President and First Lady George

21  W. Bush and Laura Bush.  Mr. Day references this photograph to support his argument that if

22  Defendants are permitted to assume Roderick participated in the scheme simply because she had some

23  association with other individuals named as defendants in the Underlying Action, so too the former

24  President and First Lady could be linked to the alleged fraud because they were photographed with Kim.

25  This can only be described as absurd argument.  Day could just as easily (and more effectively) have

26  simply referenced the straightforward legal concept that one cannot simply be deemed guilty by

27

28

1    association.  The Day Declaration contains no pertinent substantive information.

2        Far more relevant is the Declaration of Plaintiff, Judith A. Roderick.[5]  She describes herself as an

3    accountant practicing in the State of Washington for the past 44 years.  Doc. 31-4 at ¶ 2.  She admits

4    preparing taxes for Barbara Rose, a plaintiff in the *Mansu* action, as well as for Mitch & Debra Whaley,

5    lead Plaintiffs in the *Whaley* action.  *Id*. at ¶ 4.  Roderick charged each of them a standard fee.  *Id*.  She

6    denies ever receiving notice of any questions or problems related to those returns.  *Id*.  She denies ever

7

8    having done any work for any of the other plaintiffs in the Underlying Actions.  *Id*. at ¶ 6.  She denies

9    ever having "sold or promoted for sale any illegal scheme."  *Id*. at ¶ 8.  Specifically she denies ever

10   having "engaged in what is described as the 'debt elimination programs,' the 'mortgage elimination'

11   program, or the 'corporate sole program' as describe in the complaint."  *Id*.

12       Plaintiff also presents the Declarations of Danielle Barnes (Doc. 31-5), Bonnie Boone (Doc. 31-

13   6), Peter Chis (Doc. 31-7), Lisa Fideldy (Doc. 31-8), Mark Harper (Doc. 31-9), Leo Mansu (Doc. 31-

14   10), Richard Siegfried (Doc. 31-12), Shawn Tavarez (Doc. 31-13), and Michael Tavares (Doc. 31-14),

15

16   plaintiffs in the Underlying Actions.  Each recalls meeting with Mr. Weissman, at which time various

17   names were mentioned, but Roderick was never specifically discussed.  Each denies ever having any

18   contact with Roderick, denies possessing any knowledge that would support a claim against Roderick,

19   _____

20       [5] Defendants have filed evidentiary objections to each of the declarations submitted by Plaintiff.  Each objection
     consists of a chart, the first column of which contains a substantive assertion in the challenged declaration. The second
21   column then lists various objections.  The third column provides a check box permitting the court to sustain or overrule each
     objection.  For example, Defendant objects to a key portion of Plaintiff's declaration as follows:

22

23   | Objectionable Portions of Declaration | Objections | Ruling |
     |---|---|---|
     | ¶ 8<br>I have specifically never engaged in what is described as the "debt elimination programs," the "mortgage elimination" program, or the "corporate sole program" as described in the complaint. | Speculation, Improper conclusion, Lacks foundation, Irrelevant (FRE 401, 402); Improper Opinion (FRE 701, 702) | ____ Sustained<br><br>____ Overruled |

24

25

26   Doc. 32-12.  Entirely absent is any argument explaining why this denial of wrongdoing by the target of the Underlying
     Actions is "speculation," contains an "improper conclusion," "lacks foundation," or contains "improper opinion."  The Court
27   has carefully considered all of the evidentiary objections and finds them all to be equally unsupported by legal argument or
     explanation and generally meritless.  They are all OVERRULED.

28

1   and denies ever having authorized Weissman to sue Roderick.  Plaintiff also submitted the declaration of

2   Barbara Rose.  Doc. 31-11.  Despite the fact that Roderick admits preparing a tax return for her, Rose

3   declares:  "[A]t the time of the complaint, I never even knew of the existence of any facts or information

4   which would support any claim of any nature against Judith A. Roderick, and would not have authorized

5   the filing of the complaint by the attorneys had they conferred with me regarding Judith A. Roderick."

6

7   *Id.* at ¶ 7.  Rose also specifically recalled a discussion at a meeting with Weissman and several other

8   plaintiffs:

9
10
11
12
13
14
15

> During the discussions, there were various names mentioned, and I specifically reacal a
> person being mentioned who had done some of the paperwork in connection with the real
> estate transaction/loan transactions.  I specifically recall this situation because a member
> of the group stated to Mr. Weissman that this person had done nothing wrong and had
> merely done what they had asked him to do.  The question was asked of Mr. Weissman
> as to why this person would be sued as a defendant.  Mr. Weissman responded that they,
> the attorneys, were going to sue "everyone" whose name appeared on any documents or
> who could be located in any records.  Mr. Weissman was adamant that the lawsuit would
> name everyone, regardless of their involvement in the transaction if the individual's name
> or business name appeared connected in any way to the transactions.  His statement was
> that "We'll go after all these people."

16   *Id.* at ¶ 4.

17   This evidence certainly calls into question whether Defendants possessed probable cause, but

18   *Roberts*, 660 F.3d at 1163, instructs a district court to consider the evidentiary submissions of both

19   parties before ruling on the motion to strike.

20

21              **c.       Defendants' Reply Evidence.**

22   Defendants offer two declarations in reply.  Mitchell Whaley filed a declaration explaining that

23   he was a plaintiff in the *Whaley* action filed in San Bernadino County Superior Court, as well as in a

24   case filed in another district court.  Doc. 32-3 at ¶ 2.  He does not assert any connection with the

25   Underlying Actions (i.e., *Destfino* or *Mansu*).  He explains that Kennedy and several others referred him

26   to Roderick.  *Id.* at ¶ 4.  Kennedy and the other referring parties explained that they "had their Corporate

27

28   Sole matter taxes prepared by Judith Roderick."  *Id.*  As a result of this recommendation, Whaley met

1   with Roderick. *Id*. at 5.  Whaley claims Roderick told him she was going to write a book about the

2   subject of Corporate Sole tax issues and would send him a copy when it was completed. *Id*.  According

3   to Whaley, Roderick introduced him to Rita Johnson, who Roderick appeared to know well. *Id*. at ¶6.

4   Whaley claims to have "provided information to my attorney, I. Donald Weissman, regarding Judith

5   Roderick…." *Id*. at ¶ 8.  He does not detail what that information was.  He explains that he did give

6

7   Weissman authorization to sue Roderick on his behalf. *Id*.

8           Weissman also filed a Reply Declaration, in which he denies many of the statements set forth in

9   Plaintiff's declarations.  Doc. 32-1.  Relevant to the probable cause inquiry, he claims that Barbara

10  Rose's description of the "group" meeting is inaccurate and that his "office followed up extensively with

11  each potential plaintiff to determine the appropriate defendants to name as parties in the Underlying

12  Actions." *Id*. at ¶ 4.  He specifically recalls that Whaley had "a better recollection and some records of

13  persons he met with and their involvement" in the scheme. *Id*. at ¶ 6.  "His discussions concerning

14  Roderick and Rita Johnson was similar to what I heard from others, who could not recall names but

15  discussed telephone calls they had or discussions about issues they had answers by persons they were

16  directed to concerning corporation sole." *Id*.  He declares that a copy of the complaint was sent to each

17  plaintiff before filing and no one objected to Roderick's inclusion at that time. *Id*.

18

19          To survive an Anti-SLAPP motion to strike, Plaintiff must show that the complaint is "supported

20  by a sufficient prima facie showing of facts to sustain a favorable judgment. *See Roberts*, 660 F.3d at

21  1163 (internal citations and quotations omitted).  The Court "considers the pleadings and evidentiary

22  submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or

23  comparative probative strength of competing evidence." *Id.*  The motion should be granted if "as a

24  matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish

25  evidentiary support for the claim." *Id*.  "The plaintiff's burden resembles the burden he would have in

26

27  fending off a motion for summary judgment or directed verdict." *Id.*

28

Here, Plaintiff has submitted prima facie evidence of lack of probable cause in the form of a

declaration from Plaintiff herself, denying any connection with the alleged scheme, along with

declarations from many of the alleged victims, most of whom do not recall having any connection with

Plaintiff and all of whom deny possessing any evidence that would support claims against Plaintiff.  In

response, Defendants offer absolutely no substantive evidence demonstrating that they had probable

cause to file or pursue the claims brought in the *Destfino* or *Mansu* actions against Roderick.  Evidence

related to Mr. Whaley is entirely irrelevant, as he was not a plaintiff in either action challenged here.

Plaintiff has sustained her burden on the issue of probable cause.

### 2.    **Malice.**

To prevail on this motion, Plaintiff must also demonstrate a probability of prevailing on the issue

of malice.  "The malice element of the malicious prosecution tort relates to the subjective intent or

purpose with which the defendant acted in initiating the prior action....  [T]he defendant's motivation is a

question of fact [normally] determined by the [trier of fact]." *Sheldon Appel,* 47 Cal. 3d at 874.  In some

jurisdictions, malice can be inferred from, among other things, a lack of probable cause. *See Downey*

*venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 516 n.39 (1998).  In California, however, because the

presence or absence of probable cause is an entirely objective inquiry, "[b]y itself, the conclusion that

probable cause is absent logically tells the trier of fact nothing about the defendant's subjective state of

mind." *Id*. at 498.

> Merely because the prior action lacked legal tenability, as measured objectively (i.e., by
> the standard of whether any reasonable attorney would have thought the claim tenable,
> without more, would not logically or reasonably permit the inference that such lack of
> probable cause was accompanied by the actor's subjective malicious state of mind.  In
> other words, the presence of malice must be established by other, additional evidence.

*Id*. (citing *Sheldon Appel*, 47 Cal. 3d at 885–86).  The California Supreme Court has adopted this rule.

16

1   *See Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 743 (2003). [6]  This does not mean that a

2   "determination that probable cause is absent is not a fact or circumstance which the [trier of fact] may

3   consider in determining the presence of malice ... only that, standing alone, it is not sufficient to

4   demonstrate malice." *Downey Venture*, 66 Cla. App. 4th. at 498 n.29.  The additional evidence "must

5   include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to

6   deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully

7   sued defendant." *Id*. at 498-99.

8

9   > Additional proof of malice can consist of evidence a party knowingly brings an action
   > without probable cause.  [A] corollary to this rule can be stated as follows: malice can be
10  > inferred when a party continues to prosecute an action after becoming aware that the
   > action lacks probable cause.
11

12  *Daniels v. Robbins*, 182 Cal. App. 4th 204, 225-26 (2010).  "[T]he extent of a defendant attorney's

13  investigation and research may be relevant to the further question of whether or not the attorney acted

14  with malice." *Sheldon Appel*, 47 Cal. 3d at 883.  In other words, the actual ill will or improper purpose

15  required for "malice" in a malicious prosecution action can range from "open hostility to indifference."

16  *See Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 296 (2006).

17

18      In the context of an Anti-SLAPP motion, Plaintiff merely must demonstrate a "probability of

19  prevailing."  In light of all the evidence submitted by both sides, Plaintiff has at least demonstrated that

20  Defendants were indifferent to the harm their actions would cause to her.  Barbara Rose's Declaration is

21  critical here.  She recalled that Weissman planned to sue " 'everyone' whose name appeared on any

22  documents or who could be located in any records."  Doc. 31-11 at ¶ 4.  This testimony, coupled with

23  the fact that the only record evidence providing any specific connection between Roderick and any

24  plaintiff in the Underlying Actions is Roderick's own admission that she provided tax services to

25

26  Barbara Rose, suggests at least indifference on the part of Defendants.  This satisfies Plaintiff's minimal

27  [6] Plaintiff's brief repeatedly relies on outdated legal citations, including *MacDonald v. Joslyn*, 275 Cal. App. 2d 282, 292
    (1969), from an era when California followed the rule that malice could be inferred from a lack of probable cause.  Plaintiff's
28  counsel is warned that further careless reliance on overruled or superseded authority is sanctionable conduct

burden on the malice element at this stage of the litigation.

## C.     Defendant Comden.

Defendants appear to argue that Defendant Comden should be treated separately from the other Defendants because he had such minimal involvement in the litigation.  According to Comden's Declaration, Comden did not approve the filing of the Underlying Complaints and had no part in the action until the appeal.  Nonetheless, Comden did participate in pursuing the claims against Roderick, as nothing in the record suggests Defendants attempted to dismiss the claims against Roderick during the appeal.  Neither side directly discusses whether an attorney participating in a case only at the appellate stage has an independent duty to ensure the claims were originally brought with probable cause and/or continue to be based upon probable cause at the time of the appeal.   Nor does either side discuss whether there is any evidence that Comden acted with malice, although an argument could be made that his conduct demonstrated an equivalent indifference to the harm pursuing the appeal would have upon Plaintiff.  Given the lack of specificity on this issue in the papers, any further discussion of Comden's liability would be pure speculation.  The issue of Comden's continued liability can be revisited in more detail at a later stage of the litigation.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Anti-SLAPP motion to strike is DENIED in its entirety.


**SO ORDERED**
**Dated:  February 24, 2012**

                                      **/s/ Lawrence J. O'Neill**
                                      **United States District Judge**